THE STATE OF OHIO, APPELLEE, *v.*
WORKMAN, APPELLANT.

386

(No. 47044—Decided March 20, 1984.)

Mr. John T. Corrigan, county prosecutor, and Mr. Blas E. Serrano, for appellee.

Mr. Paul Mancino, Jr., for appellant.

CORRIGAN, P.J. Scott Workman, the appellant in the above-captioned case, was indicted on February 10, 1983 on two counts of kidnapping (R.C. 2905.01), on two counts of attempted rape (R.C. 2907.02, 2923.02), on two counts of intimidation (R.C. 2921.03), and on one count of extortion (R.C. 2905.11). He pleaded not guilty to all counts.

On May 2, 1983, the appellant's trial before a jury began. Eight days later, guilty verdicts were returned on one count of kidnapping, on one count of attempted rape, and on the count of extortion. A verdict of not guilty was reached on the second kidnapping count. The second count of attempted rape and the two counts of intimidation were dismissed by the trial court. The appellant was then sentenced to consecutive prison terms of five to fifteen years and three to ten years.

On January 5, 1983, the appellant was at the home of Inez Rash, a woman with whom he had been having a relationship. Also present at the time were Rash's children Allan Ozanich, Lola Ozanich, and Paula Carpenter, Carpenter's three-year-old daughter Crystal, and Crystal's seven-year-old friend Lisa Nazarm. At approximately 4:00 P.M., everyone left the house, except for the appellant and the two little girls, Crystal and Lisa. Crystal testified that the appellant then took her and Lisa into an upstairs bedroom, prevented them from leaving the room by placing a sock on the door, and took his clothes off. He allegedly requested the girls to do the same, but they refused. Crystal stated that the appellant then asked her to place her mouth on his genitals, which she would not do. Both girls testified that the appellant then urinated in Crystal's eyes. Lisa rinsed out Crystal's eyes with water and then managed to get the bedroom door open. As she and Crystal were running out, the appellant

allegedly told them that they better not say anything about what just happened.

The appellant's version of the facts is quite different. He testified that he knew both girls quite well and that he used to play with them and read to them. He stated that he was upstairs taking a shower and shaving when the girls wandered into the bedroom. Crystal asked him if he would splash some of his after-shave on her face, and when he did, some of the lotion got into her eyes. He then told Lisa to rinse out Crystal's eyes. The girls left the room, and the appellant followed shortly thereafter. He went downstairs and opened the door when some of the other family members returned home.

That evening, Crystal told her mother about what had happened that afternoon. Paula Carpenter's testimony was that at first, she did not believe her daughter's story. However, she claims that she verified the facts the next day with Lisa's mother. She then took Crystal and Lisa to the hospital where they were examined. It was while they were at the hospital that Paula Carpenter informed the police about the incident which her daughter had recounted.

Over three weeks later, Paula Carpenter received a letter from the appellant threatening to expose stories that would severely damage her reputation if she decided to press charges and testify against him in court. Additionally, she was visited by a friend of the appellant who encouraged her to drop the charges against the appellant. He told Carpenter that if she did drop the charges, the appellant would never bother her again. Undeterred, Carpenter did testify against the appellant in the trial that resulted in his conviction.

The appellant is now before this court assigning the following errors:

"I. The court committed prejudicial error and denied the defendant due process of law when it allowed witnesses for the prosecution to testify without being sworn.

"II. The court committed prejudicial error in not permitting counsel to ask questions of the witnesses when a determination was being made as to whether they were qualified to testify.

"III. The defendant was denied a fair trial when the court ruled that Crystal Carpenter and Lisa Nizarm [sic] were competent witnesses.

"IV. The defendant was denied his constitutional rights when the court ordered that the courtroom be cleared of everyone except the participants during the testimony of two prosecution witnesses, Crystal Carpenter and Lisa Nizarm [sic].

"V. The court committed prejudicial error in not requiring that the prosecuting attorney produce the statement of Paula Carpenter.

"VI. The defendant was denied a fair trial by reason of the fact that he was not permitted to present a defense and to cross-examine witnesses.

"A). The prosecution improperly used hearsay testimony of officer Barbara Parker.

"B). The defendant was prejudiced from presenting proper evidence.

"VII. The court committed prejudicial error in permitting evidence of specific instances of alleged misconduct of the defendant so as to deny the defendant a fair trial.

"VIII. The defendant was denied a fair trial by reason of improper and prejudicial cross-examination of the defendant.

"IX. The defendant was denied a fair trial by the use of incompetent, irrelevant and prejudicial testimony.

"A). The defendant was denied a fair trial by reason of references to his being in jail.

"B). The court improperly allowed Paula Carpenter to relate what she had been told by Crystal Carpenter.

"X. The court committed prejudi-

cial error in overruling the objection made by the prosecuting attorney during the course of his closing argument.

"XI. The court committed prejudicial error in not giving in form or in substance a special requested instruction of the defendant concerning the credibility of child witnesses.

"XII. The court committed prejudicial error in not instructing the jury in accordance with a request of the defendant as to the use of circumstantial evidence.

"A). The court did not fully instruct on circumstantial evidence as requested.

"B). The court erred in not giving the instruction on equal inferences.

"C). The court erred in not instructing on both circumstantial and direct evidence.

"XIII. The court committed prejudicial error in not instructing the jury concerning the limited use and consideration of hearsay statements.

"XIV. The court committed prejudicial error in refusing to instruct the jury that truth is a defense to the allegations of the extortion indictment.

"XV. The court committed prejudicial error in not instructing the jury upon lesser included offenses.

"XVI. The defendant was denied a fair trial when the court refused to give requested instruction and gave improper instructions.

"A). The court erred when it would not define value in the extortion count.

"B). The court erred in instructing the jury upon immaterial and irrelevant elements of the offense.

"C). The court erred in refusing to instruct as to the definition of sexual conduct.

"XVII. The defendant was denied due process of law when the court refused to dismiss the extortion count of the indictment.

"A). The charge should have been dismissed due to the fact that the alleged extortionate communication was never offered in evidence.

"B). There is no evidence that anything of value was sought or attempted to be obtained by the defendant.

"C). There is no evidence of any threat or unlawful use of threat so as to support a conviction for extortion.

"XVIII. The defendant was denied due process of law when the court refused to dismiss the attempted rape prosecution.

"XIX. The court committed prejudicial error in not granting the motion to dismiss the kidnapping prosecution."

I

The appellant's first three assignments of error will be addressed together as they involve the central issue of whether the trial court erred in allowing Crystal Carpenter and Lisa Nazarm to testify at trial. "The essential test of the competency of an infant witness is his comprehension of the obligation to tell the truth and his intellectual capacity of observation, recollection, and communication." *Hill* v. *Skinner* (1947), 81 Ohio App. 375, 377 [37 O.O. 213]. Additionally, in *State* v. *Wilson* (1952), 156 Ohio St. 525 [46 O.O. 437], the Ohio Supreme Court held that it is the duty of the trial court to conduct an examination before the trial to determine if a child is competent to testify. The court went on to say at 532 that:

"The child's appearance, fear or composure, general demeanor and manner of answering, and any indication of coaching or instruction as to answers to be given are as significant as the words used in answering during the examination, to determine competency."

The record indicates that the trial court conducted a careful examination of Carpenter and Nazarm to determine their competence to testify in court. Both girls stated that they were well aware of the difference between lying and telling the truth. They did not

hesitate when telling the court that lying was wrong and would result in their punishment. By their answers to the trial court's questions, Carpenter and Nazarm took an affirmation, as required by Evid. R. 603, to tell the truth while testifying.

Furthermore, it was the role of the trial court, not counsel, to determine that the witnesses were competent to testify. Counsel properly played no role in the examination of the witnesses in reaching that determination. The *Wilson* court held at 529 that:

"When the child is presented in court and the fact is revealed that the age of ten has not been reached, it is the duty of the trial judge to immediately examine the child, without the participation or interference of counsel, to determine the child's competency to testify."

This court will not disturb the trial court's determination that the witnesses were competent to testify absent a clear showing of an abuse of discretion. The record reflects that the trial court acted properly. Therefore, the appellant's first three assignments of error are without merit.

## II

The appellant claims in his fourth assignment of error that his constitutional rights were violated by the trial court's order that the courtroom be cleared during the testimony of Nazarm and Carpenter. He never asserts, though, what harm he suffered as a result of this closure.

The Supreme Court of the United States has recently considered this situation in *Globe Newspaper Co.* v. *Superior Court for the Cty. of Norfolk* (1982), 457 U.S. 596. In *Globe,* the state of Massachusetts had a law requiring mandatory closure of the courtroom to the press and public in trials involving sex offenses where the victim was under eighteen years of age. The law was originally passed to protect the victim

and his or her family. However, it left the trial court no discretion in the matter. Even if the victim and the victim's family did not object to the presence of the press or the public in the courtroom, the courtroom still had to be closed. The Globe Newspaper Co. challenged the law as a violation of the First Amendment to the United States Constitution.

The Supreme Court invalidated the Massachusetts law. It held that the state's interest in protecting the victim and the family did not justify a *mandatory* closure rule. The court stated at 608 that:

"A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim. Among the factors to be weighed are the minor victim's age, psychological maturity, and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives."

As a general rule, criminal trials must be open to the public and the press. *Richmond Newspapers, Inc.* v. *Virginia* (1980), 448 U.S. 555. However, *Globe* made clear that in certain situations, trial courts do have the discretion to close the courtroom to the press and public.

It was evident to the trial court in the instant case that Nazarm and Carpenter were very nervous, as well as soft-spoken. The purpose of clearing the courtroom of unnecessary people was to eliminate excess noise and save the witnesses as much embarrassment as possible. The standards laid down in *Globe* were followed in this case. The trial court legitimately exercised its discretion in closing the courtroom during the testimony of the two young girls, and it is our belief that that discretion was not abused. Further, the appellant suffered no prejudice as a result of the closure. Therefore, the fourth assignment of error is without merit.

## III

The appellant's fifth assignment of error is that the trial court erred in not requiring the appellee to produce the police report containing the information given to the police by Paula Carpenter. It is the appellee's contention that Paula Carpenter signed no *written* statement, and therefore nothing exists which could be produced in court. Carpenter did testify, though, that she talked to the police about the case:

"Q. Did you give a statement to the police about what you knew in this case?

"A. Yes, I did.

"Q. When was that?

"A. That was at the hospital, and then whenever I went to the detective's office."

In *State* v. *Johnson* (1978), 62 Ohio App. 2d 31 [16 O.O.3d 74], the court held that a "statement," to be producible in court, must contain a narrative continuous statement made by the witness, and not merely fragments of information. Paula Carpenter testified that the police officer repeated what she was telling him, but she also testified that she neither read nor signed any statement. Thus, there is no way of knowing whether the officer was merely copying down everything he was told, or whether he combined fragments of Carpenter's story with his own notes.

Crim. R. 16(B) states that a report made by the prosecuting attorney or his agent is *not* discoverable. A police report falls in that category. However, even if the oral statement made by Carpenter to the police was producible in court, the appellant has not shown, in any fashion, how he was harmed by the appellee's failure to produce the report containing the statement. Therefore, this assignment of error is not well-taken.

## IV

The appellant addresses several issues in his sixth assignment of error.

First, he states that it was error for the trial court to disallow him from cross-examining Paula Carpenter about the contents of the letter she received from him. The truth is no defense to a charge of extortion. The appellant attempted to show that the contents of the letter were true, and that he could therefore not be found guilty of extortion. R.C. 2905.11 reads in pertinent part:

"(A) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:

"* * *

"(5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage his personal or business repute, or to impair his credit."

Even if the contents of the appellant's letter were completely true, that would *not* serve as a defense to a charge of extortion. Statements can be true and still cause ridicule, contempt, and damage to a person's reputation. The appellant's proposed cross-examination of Carpenter was therefore irrelevant, and he suffered no error due to the court's prohibiting him from cross-examining Carpenter regarding the contents of the letter.

The appellant further asserts as error the court's allowing Detective Barbara Parker to testify that Lisa Nazarm's testimony did not completely coincide with what she told Parker before the trial began.

"Q. Now, you were sitting here when Lisa testified here this morning?

"A. Yes, I was.

"Q. Did her testimony concur with her relation of the facts to you before?

"* * *

"A. No, it did not."

It is the appellant's contention that this testimony constituted hearsay and was therefore inadmissible. Evid. R. 801(C) defines "hearsay" as "a statement, other than one made by the

declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." Parker's testimony regarding Nazarm in no way constituted hearsay. No specific statement was offered, and no statement was made to prove the truth of the matter asserted. Thus, Parker's testimony was properly admissible.

While testifying, the appellant attempted to recount several instances where Paula Carpenter had scolded Crystal for lying. The court prohibited this testimony. Evid. R. 608(B) states:

"Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

"The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility."

Thus, the court did not err in prohibiting the challenged testimony. First, as a general rule, only convictions for crimes can be used to attack the credibility of a witness. Second, even if the court believed there was probative value to such testimony, the testimony can only be heard when the witness himself is being cross-examined, or upon cross-examination of another witness who testified about the truthfulness of the first witness. In no instances can such testimony be heard upon *direct* examination. The appellant's sixth assignment of error is overruled.

## V

The appellant presented several witnesses who testified that he was excellent with children and that they completely trusted him. He thus put his character in issue in this case. Evid. R. 404(A) reads in part:

"Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:

"(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable."

It was therefore proper for the appellee to rebut the testimony of the appellant's witnesses by bringing forth its own witnesses to testify regarding specific acts of misconduct by the appellant. The seventh assignment of error is therefore without merit.

## VI

In his eighth assignment of error, the appellant contends that the prosecutor's cross-examination of him was highly prejudicial and denied him a fair trial. The record clearly indicates that the prosecutor wanted to insure that the jury heard the appellant spent time in prison. The appellant was originally convicted of a crime, although his counsel stated that the conviction was later overturned. The prosecutor's approach to questioning the appellant about the conviction and time spent in prison was improper and the court admonished him for it. However, in light of the entire record, the appellant suffered no harm

as a result of this line of questioning. We thus overrule this assignment of error.

## VII

The appellant's ninth assignment of error lacks merit. The appellant, as in the previous assignment of error, states he was prejudiced by references to the fact that he spent time in prison. Any such references, by either the prosecutor or witnesses, were so scattered and brief as to not affect any of the appellant's substantial rights.

Additionally, the appellant states that Paula Carpenter should not have been allowed to testify as to what her daughter told her. It is axiomatic that a statement is *not* hearsay if it is only offered for the fact that it was made, not for the truth of the matter asserted. The jury in its role as trier of facts could believe or disbelieve any of the testimony. This assignment of error is not well-taken.

## VIII

In their closing arguments, counsel for both the appellant and appellee stated that the man who visited Paula Carpenter requesting that she drop charges against the appellant could have been called as a witness. Neither the appellant nor the appellee did call this man to testify. In each instance, an objection was made, and in each instance, the objection was overruled. The parties thus received identical treatment. No prejudicial error was suffered by either party as a result of these comments. The jury was instructed that closing arguments do not constitute evidence. This assignment of error is without merit.

## IX

In his eleventh assignment of error, the appellant argues that the trial court should have given a special instruction on the credibility of child witnesses. The court, in a proper exercise of its discretion, determined that Crystal Carpenter and Lisa Nazarm were competent to testify. Furthermore, the jury instructions explicitly stated that the jurors were the sole judges of the credibility of the witnesses. This assignment of error is overruled.

## X

It is the appellant's contention in his twelfth assignment of error that the trial court should have given a jury instruction on circumstantial evidence based on the holding in *State* v. *Kulig* (1974), 37 Ohio St. 2d 157 [66 O.O.2d 351]. The Ohio Supreme Court at 160 stated in that case that, "* * * where circumstantial evidence alone is relied on to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence." However, in the instant case, none of the essential elements of any of the crimes charged rested solely on circumstantial evidence for proof of their existence. In fact, almost all of the evidence in this case was direct, not circumstantial. In cases such as this one, it has been held that courts are not required to provide *any* instruction on circumstantial evidence. *State* v. *Bissantz* (1982), 3 Ohio App. 3d 108. Therefore, the fact that the trial court gave an instruction on circumstantial evidence which was not identical with the instruction in *Kulig* did not prejudice the appellant in any way. The assignment of error is not well-taken.

## XI

Contrary to the appellant's argument, it was not error for the trial court to fail to instruct the jury on the limited use of hearsay statements. A statement is not hearsay if it is offered only for the fact that it was made. It is the role of the court to decide the legal issue of admissibility of evidence, and the court is not obligated to instruct the jury on every evidence decision it makes. It is the role of the jury to assign the proper

weight to the evidence. The appellant was not harmed by the lack of this requested instruction. Therefore, this assignment of error is without merit.

## XII

The appellant's fourteenth assignment of error, that the truth is a defense to a charge of extortion, was previously discussed. This assignment of error is not well-taken.

## XIII

The fifteenth and sixteenth assignments of error will be discussed jointly as they center around the issue of lesser included offenses. The appellant first asserts that coercion is a lesser included offense of extortion, and the jury should have received an instruction on that fact. As stated in the Committee Comment to R.C. 2905.12, coercion is not a lesser included offense of extortion when the offender is attempting to extort something of value or compel a person to act unlawfully. The appellant in this case allegedly threatened to expose embarrassing stories about Paula Carpenter unless she decided not to testify against him. Carpenter's failure to testify against him would have been of tremendous value to the appellant. Thus, an instruction on coercion was not required.

It is also asserted that instructions should have been given on sexual battery and gross sexual imposition. Sexual battery is not a lesser included offense of rape. *State* v. *Collins* (1977), 60 Ohio App. 2d 116 [14 O.O.3d 94]. There may be some instances where gross sexual imposition can be considered a lesser included offense of rape. However, "[t]he mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged." *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382 [18 O.O.3d 528]. Rape involves sexual *conduct*; gross sexual imposition involves sexual *contact*. What

the appellant allegedly asked Crystal Carpenter to do in this case clearly falls within the category of sexual *conduct*. Under any reasonable view of the evidence, the jury could not have found the appellant guilty of attempted gross sexual imposition. Therefore, the court's instructions to the jury regarding rape and extortion were proper.

The challenges to the trial court's jury instructions by the appellant are not well-taken by this court. "The purpose of instructions to a jury is to clearly define the issues in a case, and, by a statement of the law applicable to the facts developed at the trial, assist the jury in arriving at a proper verdict." *Thomas* v. *Lewis* (App. 1961), 88 Ohio Law Abs. 84, 88. Various instructions to a jury must not be considered in isolation from one another. In determining whether prejudicial error occurred at trial, a jury charge must be considered as a whole. *State* v. *Hardy* (1971), 28 Ohio St. 2d 89 [57 O.O.2d 284]; *Cupp* v. *Naughten* (1973), 414 U.S. 141. The trial court's jury instructions in this case did not, in any way, prejudice the appellant. These assignments of error are therefore overruled.

## XIV

The appellant's final three assignments of error will be addressed together. The appellant argues that the trial court erred by not granting his motions for acquittal on the charges of extortion, attempted rape, and kidnapping. There was substantial testimony in this case by a large number of witnesses. A motion for acquittal made pursuant to Crim. R. 29 should not be granted when "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401]. The evidence must therefore be extremely strong in favor of a defendant in order for a motion for ac-

quittal to be granted. That level of strength was not reached in this case. If anything, the weight of the evidence was leaning more strongly against the appellant than for him. The trial court acted properly in denying the appellant's motion for acquittal. These three assignments of error are without merit.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

PRYATEL and PATTON, JJ., concur.