The STATE of Ohio, Appellee,

v.

BRYAN, Appellant.

[Cite as *State v. Bryan* (1998), 127 Ohio App.3d 573.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72416.

Decided May 18, 1998.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Ronald James,* Assistant Prosecuting Attorney, for appellee.

*Leneghan & Leneghan* and *Patrick P. Leneghan,* for appellant.

JAMES D. SWEENEY, Judge.

Defendant-appellant Roger C. Bryan, Sr. ("Bryan"; date of birth December 23, 1951) appeals from his jury trial conviction of the amended indictment count of sexual battery (R.C. 2907.03[A][2] ).[1] For the reasons adduced below, we reverse and vacate the conviction.

A review of the record on appeal indicates that the offense at issue was alleged to have occurred during the early morning hours of Saturday, February 17, 1996, at Bryan's residence located at 627 The Burns, Berea, Ohio. The barely nineteen-year-old victim was Miss Michal D. Rapp ("Rapp"; date of birth January 10, 1977). The basic premise of the victim was that Rapp attended a party at the Bryan residence on the evening of Friday, February 16, 1996, became overly intoxicated by drinking a great deal of beer provided by the home owner, Bryan, and eventually went to sleep in one of defendant's bedrooms.[2] The victim's best friend, Miss Jozette Strzala, was also sleeping in the same room. Shortly after the lights in the bedroom were turned off, the victim felt someone lie down next to her against her back. The victim then felt this presence start kissing her. She rolled over to face the person and discovered the defendant. The victim admitted to returning his kisses for about a minute before she realized, after she had removed his hand going down her pants, that she did not want to go further and repeatedly insisted that she wanted him to stop. The lights then came on in the room, and she and her female friend left the room and spent some time looking for some misplaced personal items. While she was out in the main room of the house, the defendant came up behind her and rubbed up against her. The victim moved away several times in attempts to avoid the defendant, but the defendant kept asserting himself, without success. Eventual-

---

1. The appellant was originally indicted on one count of rape (R.C. 2907.02[A][2] ), but the indictment was amended during trial to reflect rape under R.C. 2907.02(A)(1)(a), which provides:

   "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

   "(a) For the purposes of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug or intoxicant to the other person, surreptitiously or by force, threat of force, or deception[.]"

   The charge was further amended during trial at the close of the state's case to reflect sexual battery as a presumably lesser included offense.

2. During the Bryan party, the victim and some of her friends left for a brief period of time to attend another party at another location known as "Brian C's." While at this other smaller party for approximately one hour, the victim had a few more beers and also stumbled and fell down several times as a result of her drunken stupor, before returning to the Bryan party at approximately 1:30 a.m. to 2:00 a.m., after having stopped briefly at a Taco Bell restaurant to get something to eat on the way.

ly, the victim went to a bedroom (the defendant's bedroom) where she observed her friend, Miss Strzala, apparently sleeping. The victim, after being advised by the defendant's live-in female companion, Miss Kristie Bibbins, that the defendant was passed out in a chair in the living room, lay down on the bed with her friend and fell asleep. In the early morning hours, at approximately 5:30 a.m., Rapp was awakened by the action of the defendant (then forty-five years of age), who had pulled her pants down and her overlying skirt up, inserting his penis into her vagina. The victim stated that the defendant was behind her and that she did not know how long she had been sleeping. The victim, who was lying on her side facing her friend, Miss Strzala, tried to awaken her friend by kicking her, but had no success. After about a minute or two of this intercourse action, the victim noticed someone coming toward the door to the room. The victim felt her pants "fly up" and her skirt "get pulled down," and a blanket come over her followed by the defendant's arm as the lights to the room were turned on by Miss Bibbins. Just as quickly as the lights came on, they were turned off, and the door was closed by Miss Bibbins, whom the victim heard walking away. During this encounter with defendant, the victim testified that she could not move or scream, could not breathe, and just cried. The victim, still crying, heard the defendant start snoring and then she went to the bathroom, locked the door, and adjusted her clothing. Miss Bibbins came and knocked on the bathroom door, but the victim would not let her in, instead demanding repeatedly that she (the victim) wanted to speak to Miss Strzala. Eventually, the victim let Miss Bibbins into the bathroom, at which time the victim told Miss Bibbins what had happened. Miss Bibbins left the bathroom and returned a short time later, telling the victim that Miss Strzala was awake in the defendant's bedroom and that she (Miss Strzala) wanted to talk to her (the victim). The victim, still intoxicated but sobering up, then left the bathroom and went to talk to Miss Strzala. The defendant was not around when the victim returned to the bedroom. Miss Bibbins told the victim that the defendant had left for work at 7:00 a.m. Later that morning, the victim, at the urging of Miss Strzala and Miss Bibbins, spoke with the defendant on the telephone. According to the victim, the offender refused to be told that he had perpetrated this act, and, in frustration, the victim concluded the conversation by hurling the telephone to the ground. The victim was examined at a hospital later that morning.

At trial, four witnesses testified on behalf of the state. The first witness for the prosecution was the victim, Miss Rapp, who testified to the aforementioned factual pattern.

The second witness for the prosecution was Miss Strzala, who testified that she had attended several parties hosted by the defendant at his home where the guests would be teenagers, mostly high-school-aged children, and only beer would

be served by the host. Miss Strzala, who claimed to have had only one beer that evening, generally corroborated the version of events before and after the offense provided by the victim, particularly the drunkenness of the victim, the victim's ultimate desire not to have sexual relations with the defendant and to avoid the defendant, and the victim's crying and demeanor following the offense. Miss Strzala was asleep at the time of the offense and did not observe the defendant in his bed that morning. After waking on the morning of the offense, Miss Strzala was told that the defendant was at work.

The third witness for the prosecution was Berea Police Patrolman Charles Gute, who was dispatched to the hospital where the victim was treated on the morning of the offense and where he recovered a "rape kit" prepared by the hospital.

The fourth witness for the prosecution was Berea Police Detective Roger W. Vaughn, who investigated the allegations of the victim. Apart from laying a chain of custody and evidentiary foundation for the "rape kit" and other physical evidence, the witness offered no substantive evidence except to state whom he interviewed and that when Miss Bibbins was interviewed, she claimed that she had observed nothing.

At that point, the prosecution rested its case. After the court rejected the admission of the physical evidence exhibits, the defense moved for acquittal pursuant to Crim.R. 29. The court granted the motion with regard to the charge of rape, but allowed the case to go forward on the "lesser included offense of sexual battery" pursuant to R.C. 2907.03(A)(2).[3]

The defense case consisted of the testimony of Miss Bibbins, Ms. Shelly L. Kovach, and Ms. Jacqueline Schiros, who generally corroborated the testimony of the victim on some points but differed in their recollection concerning other points. The defense renewed, without success, its motion for acquittal at the close of its case.

Following closing arguments and the jury charge, the jury returned its verdict of guilty to the offense of sexual battery.

This appeal presents four assignments of error:

---

**3.** Sexual battery under R.C. 2907.03(A)(2) provides:

   "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

   "* * *

   "(2) The offender knows that the other person's ability to appraise the nature of or control his or her own conduct is substantially impaired."

"I

"The trial court erred in presenting the issue of sexual battery to the jury because R.C. 2907.03(A)(2) is not a lesser included offense of R.C. 2907.02(A)(1)(a)."

The three-part test for determining whether an offense is a "lesser included offense" is stated in *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus:

"An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (*State v. Kidder* [1987], 32 Ohio St.3d 279, 513 N.E.2d 311, modified.)"

Comparing the two offenses *sub judice*, the offense of sexual battery under R.C. 2907.03(A)(2), a third degree felony (see R.C. 2907.03[B] ) for offenses committed prior to July 1, 1996, with a potential incarceration penalty of two, two and one-half, three, or four years to ten years (see R.C. 2929.11[B][6] ), carries a lesser penalty than the offense of rape under R.C. 2907.02(A)(1)(a), an aggravated first degree felony (see R.C. 2907.02[B] ) for offenses committed prior to July 1, 1996, with a potential incarceration penalty of five, six, seven, eight, nine, or ten years to twenty-five years (see R.C. 2929.11[B][1][a] ). Thus, the first element of *Deem* is demonstrated.

The second element of *Deem* is not demonstrated because the greater offense can be committed without having also committed the lesser offense. In the case of the "lesser" offense, it must be proven that sexual conduct occurred between the offender and another not the spouse of the offender, and that the offender knew that the victim's ability to control his or her conduct or comprehend his or her actions was substantially impaired. Proof of the greater offense requires considerably more: it must be proven that the sexual conduct occurred; that the offender administered a drug or intoxicant to the victim, which action substantially impaired the victim's judgment or control; and that such action by the offender was taken so as to prevent resistance by the victim. These additional elements, having the offender take positive action to impair the victim's control or judgment by personally administering a drug or intoxicant to the victim and having the offender's purpose to prevent resistance by the victim, prove fatal in classifying the offense of sexual battery under R.C. 2907.03(A)(2) as a "lesser included offense" to rape under R.C. 2907.02(A)(1)(a). See *State v. Collins* (1977), 60 Ohio App.2d 116, 127–128, 14 O.O.3d 94, 101–102, 396 N.E.2d 221, 229–230 (offenses of sexual battery under R.C. 2907.03[A][2] and [A][3] are not lesser

included offenses of rape under R.C. 2907.02[A][1] ); accord *State v. Workman* (1984), 14 Ohio App.3d 385, 393, 14 OBR 490, 498–499, 471 N.E.2d 853, 863–864.

The appellee herein, in addressing this assignment, succinctly recognized the inapplicability of the lesser included offense classification to the offense of sexual battery in this case, see appellee's brief at 3, and has requested that this court "overturn the decision of the trial court" for the reasons stated in the first assignment of error. See appellee's brief at 5. Based on its failure of compliance with the *Deem* test, we conclude that the trial court committed plain error in allowing the case to go forward on, and charging the jury on, the inapplicable "lesser included offense." But for the plain error, the outcome of the case would have been different, resulting in an acquittal.

The first assignment of error is affirmed.

The remaining three assignments, which argue that the verdict was not supported by the sufficiency or manifest weight of the evidence and that the court erred in denying the motion for acquittal, are moot by virtue of the determination of the first assignment of error. See App.R. 12(A)(1)(c).

*Judgment reversed*
*and conviction vacated.*

TIMOTHY E. McMONAGLE, P.J., and MICHAEL J. CORRIGAN, J., concur.