OPINION
Defendant-appellant, Michael Kellum, appeals his conviction in the Clinton County Municipal Court for driving while under the influence of alcohol ("DUI") in violation of R.C.4511.19(A)(1).
On April 27, 1997, Ohio State Highway Patrol Trooper Robert New arrested appellant for DUI in violation of R.C.4511.19(A)(1). On September 3, 1997, appellant filed a motion to suppress and/or dismiss on the ground that there was no probable cause to arrest him.
At the hearing on the motion to suppress, New testified as follows: On April 27, 1997, at about 7:40 p.m., New was dispatched to the scene of a single-vehicle accident on State Route 73 in Clinton County, Ohio. At the scene, New observed appellant's car on its top, perpendicular to and partially off the right side of the roadway. Appellant was standing outside smoking a cigarette. Appellant told New that he did not know what happened but that he had picked up someone in Waynesville, whom he did not know and whom he had never seen before, and that he (appellant) had let the person drive his car from Waynesville. Appellant's statements were contradictory to his Ohio State crash witness statement taken by New at the scene of the accident and which stated as follows:
Q. Tell me what happened?
 A. I went down 73 toward Wilmington. He swerved for a car coming over the hill.
Q. What color was the car on the hill?
A. I don't know.
Q. Who was driving your car?
A. Scott. I don't know his last name.
Q. Where did you meet him?
 A. I picked him up at 73 Route 48. At Bob's Gas Stop.
Q. You picked him up there?
A. At the gas station.
Q. Did you see him prior to picking him up?
 A. No, I don't know him. I saw him 1 other time.
Q. Do you know where he went?
 A. He got out of the car ran. Someone picked him up.
New testified that there was no evidence of any intervening cause of the accident other than the vehicle driving off the right side of the roadway. New also testified that appellant appeared unsteady on his feet, that his eyes were red and glassy, that his speech was slurred, and that he had an odor of alcohol about him. New asked appellant to perform the horizontal gaze nystagmus test ("HGN") which appellant failed.[1] New subsequently placed appellant under arrest. New explained that field sobriety tests were not conducted at the scene of the accident for the safety of appellant and other motorists.
On cross-examination, New admitted that he did not know the exact time of the accident and that he did not see appellant driving the car. New testified that appellant never admitted driving the car but that he instead stood by his "hitchhiking" story.
On October 3, 1997, the trial court denied appellant's motion to suppress as follows:
 The state stipulated warrantless arrest and presented evidence in support of the arrest.
 The Court overrules the motion to suppress for Reasons stated of record. The unrebutted testimony is that Trooper New arrived at the scene of a one-car crash where only defendant was present. Indicia of alcohol impairment were observed by the trooper regarding deft. Probable cause was demonstrated to arrest deft for OMUI based upon both direct and circumstantial evidence[.] (Emphasis sic.)
On November 21, 1997, the case was tried to the bench. At trial, the state again presented the testimony of New which was very similar to his testimony at the hearing on the motion to suppress. New testified that while performing the HGN test, which was performed five minutes after he arrived to the scene, he observed six strong clues. New also testified that appellant had a very strong odor of alcohol about him. New testified that appellant was subsequently taken to the highway patrol post where he became belligerent and refused to take a breath test or field sobriety tests.
On cross-examination, New admitted he did not know how long appellant's car had been off the roadway before he was dispatched. New agreed that trauma could have caused the nystagmus he had observed. New testified that appellant refused to take the tests at the post because he was not the driver. New also testified that appellant did not have his car keys in his possession. Apparently, the keys were never found.
At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A). The trial court denied the motion. Thereafter, appellant testified on his own behalf. Appellant stated he picked up Scott, whom he had met once on a previous occasion, at a gas station where appellant stopped to buy dinner. Because Scott needed a ride and because appellant wanted to eat, appellant decided to let Scott drive. While appellant did not know how the accident happened, he remembered the car swerving and headlights of an oncoming car.
After appellant's car came to a rest on its top, Scott kicked the driver's side window and extricated both himself and appellant. They then went to a house for assistance but no one was home. Scott left the scene to go to the gas station up the street to call for help but never came back. Appellant testified he has not been able to locate Scott since the accident. Ten to fifteen minutes after the crash, a driver pulled up and called the police for assistance. New eventually arrived at the scene. Appellant admitted that even though he was "in very much pain" and had a "gash on the back of [his] head," he refused medical treatment at the scene. Appellant repeatedly told New he was not driving. Appellant admitted he refused to take field sobriety and breath tests and to sign any forms because he was not the driver.
At the close of the evidence, appellant was convicted as charged. Appellant timely filed this appeal and raised three assignments of error. At the heart of all three assignments of error is appellant's claim that the state failed to prove that appellant was "operating" his car within the statutory meaning.
In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress. The denial of a motion to suppress involves mixed questions of law and fact. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. State v. Mills (1992), 62 Ohio St.3d 357,366, certiorari denied (1992), 505 U.S. 1227,112 S.Ct. 3048. Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. We are obligated "to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. U.S. (1996),517 U.S. 690, ___, 116 S.Ct. 1657, 1663. However, an appellate court determines as a matter of law on a de novo basis, without deferring to the trial court's conclusion, whether these facts meet the applicable legal standard. Id.; State v. Klein (1991),73 Ohio App.3d 486, 488.
Appellant was convicted of DUI in violation of R.C. 4511.19-(A) (1) which states that "[n]o person shall operate any vehicle * * * within this state if * * * [t]he person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse[.]" In State v. Cleary (1986), 22 Ohio St.3d 198, the Supreme Court of Ohio held that "[t]he term `operating' encompasses a broader category of activities involving motor vehicles than does `driving.' * * * [A] person may operate a vehicle even though the vehicle is not moving." Id. at 199. "Such a broad definition is essential to achieve the legislative purpose of the statute, discouraging those who have consumed too much alcohol from undertaking the operation of motor vehicles." Id. at 200.
In Fairfield v. Regner (1985), 23 Ohio App.3d 79, we held that:
 The weight of authority appears to be that where a police officer comes to the scene of an accident wherein there was no observable driving but a suspect is found in or near the automobile with an odor of alcoholic beverage on or about his person, there is probable cause to arrest the suspect for driving under the influence.
Id. at 84. See, also, State v. Bernard (1985), 20 Ohio App.3d 375,376 (concluding that evidence of an accident with no apparent explanation other than impaired control by the driver and an odor of alcohol about the driver provided probable cause to arrest the driver for driving under the influence of alcohol); Westlake v. Vilfroy (1983), 11 Ohio App.3d 26, 27 (finding probable cause to arrest for driving under the influence when police observed the defendant lying on the grass in the early morning hours with an odor of alcohol near a wrecked car).
The evidence at the suppression hearing indicated that the wrecked car belonged to appellant, who was the only person present at the accident scene that was related to the car. The evidence also indicated that appellant's explanation to New as to the identity of the person allegedly responsible for the accident and appellant's familiarity with this person was not only self-contradictory within a short period of time, but also completely lacking any corroboration.[2]
In light of New's experience and training in DUI cases, as testified to by New, his determination that appellant's vehicle had driven off the road, his knowledge of appellant's involvement in a single-vehicle accident, his detection of an odor of alcohol about appellant, his observation of appellant's slurred speech, unsteady appearance, and red and glassy eyes, along with appellant's contradictory statements regarding Scott, the alleged driver, and appellant failing the HGN test, we find that there was sufficient evidence that appellant had been operating his vehicle while under the influence of alcohol. We therefore find that the trial court properly overruled appellant's motion to suppress. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29(A) motion. In his third assignment of error, appellant argues that his conviction was against the manifest weight of the evidence.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. "The evidence must therefore be extremely strong in favor of a defendant in order for a motion for acquittal to be granted." State v. Workman (1980), 14 Ohio App.3d 385, 393-394. In reviewing a ruling on a Crim.R. 29 motion for judgment of acquittal, the reviewing court construes the evidence in a light most favorable to the state. State v. Jones (Sept. 20, 1993), Clermont App. No. CA92-12-117, unreported, at 11.
In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact-finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHaas (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
At trial, New's testimony was similar to his testimony at the suppression hearing. New testified that when he arrived at the scene, appellant told him that a "Scott" was driving the car and that after Scott crashed the car, Scott took off. New testified that while at the scene, appellant "had gone from telling me he had never seen the gentleman [Scott] before to now he knows his name. * * * [N]ow he's gone from telling me that he's never seen him before to telling me that he saw him one other time." The record indicates that there were no witnesses to the accident other than appellant and Scott.
Appellant testified that even though he had seen Scott only one other time, he let Scott drive his car so he could eat. Following the accident, Scott left the scene to call for help but never came back. Appellant testified that he has not been able to locate Scott ever since. Appellant testified that a motorist pulled up and called for help ten to fifteen minutes after the accident. Appellant admitted that while he was in great pain and had a gash on the back of his head, he refused medical assistance at the scene. Appellant also admitted he had drunk five or six beers the day before.
In light of the foregoing and incorporating our analysis under appellant's first assignment of error, we find that when viewing the evidence in the light most favorable to the state, a factfinder could infer that on the day of the accident, appellant was operating his vehicle in violation of R.C. 4511.19(A)(1). While arguably this is a close case, the issue turned upon the credibility of appellant. Obviously, the trial court chose to disbelieve appellant's testimony. "It would be improper for this court to substitute its judgment for that of the trial court given that court's superior opportunity to observe the various witnesses and judge their credibility." State v. King (Sept. 23, 1985), Clermont App. No. CA85-03-013, unreported, at 2.
In accordance with the standards of reviews articulated above, we therefore find that the trial court properly denied appellant's motion for acquittal and that appellant's conviction was not against the manifest weight of the evidence. Appellant's second and third assignments are overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] The record indicates that during the HGN test, New observed six out of six clues which indicate that an individual is possibly under the influence of alcohol.
[2] This total lack of corroboration and appellant's self-contradictory statements regarding the alleged driver distinguish this case from our opinion in State v. Easterling (May 12, 1997), Butler App. No. CA96-06-120, unreported. In Easterling, as in the case at bar, the defendant, who was involved in a single-vehicle accident, told the police that someone else, a friend of his from bingo, was driving his car. According to the defendant, his car keys were never recovered. However, unlike in the case at bar, there was no evidence in Easterling that the defendant's story regarding the identity of the driver was self-contradictory. In addition, the defendant's daughter testified that, knowing her father was drinking, she looked out at the car while her father was in her house and saw a person sitting in the driver's seat.