JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Bobby Thompson, appeals from his conviction for rape. For the reasons set forth below, we affirm.
 {¶ 2} On October 4, 2006, defendant was indicted pursuant to a three-count indictment in connection with an alleged attack upon S.N., a fourteen-year-old. Count One alleged rape by force. Count Two alleged that S.N.'s ability to resist or consent was substantially impaired due to a mental or physical condition and defendant knew or had reasonable cause to believe that S.N.'s ability to resist or consent was so impaired. Count Three charged defendant with kidnapping, and all charges contained one-year and three-year firearm specifications and a sexually violent predator specification. Defendant pled not guilty and the matter proceeded to a jury trial on April 10, 2007.
 {¶ 3} For its key evidence, the state presented the testimony of S.N., S.N.'s mother and cousin, nurse Lauren McAliley, neighbor Angela Durham, Brian Palk, Deputy Sheriff Martin Lutz, Bureau of Criminal Identification and Investigation forensic scientist Melissa Zielaskiewicz, and S.N.'s friends Brendan Ragin and Kirsten Williams. *Page 4 
 {¶ 4} S.N. testified that, on August 24, 2006, she, her brother, and her cousin went to the home of Kirsten Williams. They were joined by Brendan Ragin, Brandon Ragin, Brian Palk, and another friend named Solomon. Defendant, whom the girl had seen once before, approached and told them that he had a key to the abandoned house next door and that they could all go in. The group then went upstairs and defendant offered them liquor. S.N. and some of the others drank the liquor. She became dizzy and went downstairs to use the restroom. Defendant followed her. There was no electricity in the home and S.N. was unsure where she was going. While on the basement steps, defendant touched her vagina over her clothing. S.N. tried to pull away but she stated that she felt weak and ill from the liquor. Defendant subsequently took off his pants and had sexual relations with her. Her friends subsequently learned what was happening and removed her from the home, called police, and contacted S.N.'s mother.
 {¶ 5} S.N. admitted that, in earlier statements, she falsely indicated that defendant made her drink the alcohol at gunpoint and falsely indicated that he dragged her into the abandoned home. She stated that she was afraid of her mother and did not want her mother to know that she had been drinking alcohol. Brian Palk testified that he was at Williams' home with S.N. and the others. Defendant, whom Palk had known for about two years, approached and tried to sell the group CDs. According to Palk, defendant said that he was going to get liquor and that the group could then go to his house. Defendant then stood out in the street and spoke to *Page 5 
Brendan Ragin and the group subsequently went to defendant's house.
 {¶ 6} The group went upstairs and, according to Palk, defendant passed around a bottle of "Paul Masson liquor." Palk testified that he became concerned that S.N. was becoming drunk and he told her to "chill." The group later went back downstairs but could not find S.N. Kirsten Williams found her and brought her out of the house. At this time, S.N. was crying, and tripping and trying to pull up her pants. Defendant ran from the house and was chased by some of the boys, but not caught.
 {¶ 7} On cross-examination, Palk admitted that he falsely told the police that the group went to the store and that S.N. had to use the bathroom, so she and defendant went into the abandoned house. Palk made the false statement because he was afraid that the group would get into trouble for underage drinking.
 {¶ 8} S.N.'s cousin testified that defendant let the group into the house and passed around liquor to them. The group went outside but could not find S.N. They then found her on the kitchen floor crying. According to the cousin, defendant was standing over her with his shirt off.
 {¶ 9} Kirsten Williams testified that a group of people came to her house at around 4:00 p.m. Defendant, whose family has a house a few doors away, spoke with Brendan, then went to the store. When he returned, he had liquor and they went into defendant's house. Kirsten testified that there was no electricity in the home and the house was dark and filled with junk. Defendant passed the liquor around and S.N. began to act "goofy." Kirsten and the others left after about one-half *Page 6 
hour. They did not see defendant and S.N. and assumed that they had gone to the store. The group then walked to the nearby store but did not see S.N. and defendant. They then returned to defendant's home. According to Kirsten, S.N. was pulling her pants up and crying, and defendant was laughing and said that S.N. fell on him. Kirsten helped S.N. out of the house and called her mother. The boys chased after defendant but could not apprehend him.
 {¶ 10} Angela Durham observed a group of children in the street and called police after she heard one male threaten to fight another.
 {¶ 11} Deputy Lutz responded to the call and observed individuals wandering in the street. One individual was crying. He went into the house and observed that it was vacant with no electricity and there were numerous alcohol containers strewn about.
 {¶ 12} S.N.'s mother testified that she gave S.N. and her brother permission to go to Kirsten's house but became concerned at 9:30 p.m. when they had not returned. She drove to the area looking for them and then received a call from her son to get them. The woman observed S.N. in the street, with foam at her mouth and disheveled hair. She was pulling up her pants and crying. The woman drove her to the emergency room at University Hospital where S.N. was later admitted.
 {¶ 13} Nurse Lauren McAliley testified that she completed a rape kit in connection with this matter but the evidence could not be collected for several hours because S.N. could not immediately consent and had to first be treated for *Page 7 
intoxication. According to McAliley, some evidence could conceivably have been lost in this interval because S.N. urinated. S.N. smelled of alcohol and was crying inconsolably. There was a speck of debris inside the hymen. McAliley collected S. N.'s clothing and also obtained swabs of her vaginal area, her skin and scalp.
 {¶ 14} Melissa Zielaskiewicz testified that she analyzed S.N.'s clothing as well as the swabs obtained in connection with the rape kit. Defendant could not be excluded as the source of DNA found in S.N.'s underwear, and the odds that someone other than defendant contributed the DNA were 1 in 46 quintillion, based upon the FBI's data base. Seminal fluid was found in the swab from S.N.'s face but no DNA was obtained from this sample. The vaginal swabs were negative for semen.
 {¶ 15} The state dismissed the firearm specifications and the matter was submitted to the jury. Defendant was subsequently convicted of the rape charge alleged in Count Two and acquitted of the rape count alleged in Count One and acquitted of the kidnapping charge. The sexually violent predator specification was dismissed but, following a separate hearing, defendant was determined to be a sexual predator. He was sentenced to seven years of imprisonment and five years of postrelease control. Defendant now appeals and assigns three errors for our review.
 {¶ 16} Defendant's first assignment of error states:
 {¶ 17} "The trial court erred in failing to instruct the jury on the lesser included *Page 8 
offense of sexual battery."
 {¶ 18} As an initial matter, we note that defendant's trial counsel never requested an instruction on lesser included offenses. Rather, the state contemplated the notion of a lesser included offense but then withdrew the suggestion. (Tr. 623.)
 {¶ 19} As to whether it was plain error for the court not to instruct the jury on sexual battery, we note that in State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, the Supreme Court established a three-part test to determine whether one offense is a lesser included offense of another. According to Deem, a lesser included offense exists if:
 {¶ 20} "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." Id. at paragraph three of the syllabus.
 {¶ 21} Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213,533 N.E.2d 286, paragraph two of the syllabus.
 {¶ 22} Defendant notes that in State v. Stricker, Franklin App. No. 03AP-746, *Page 9 2004-Ohio-3557, the court held that the offense of sexual battery under R.C. 2907.03(A)(2) is a lesser included offense of rape under R.C. 2907.02(A)(1)(c), based on a victim's impaired ability to appraise or control her own conduct. Id., citing to In re Sechler (Aug. 29, 1997), Trumbull App. No. 96-T-5575.[1]
 {¶ 23} In this particular instance, we cannot say that the court committed plain error in failing to instruct the jury on sexual battery as a lesser included offense of rape as charged in Count Two. More specifically, we cannot say that the trier of fact could reasonably find against the state and for the accused on one or more of the elements of the crime charged, and for the state and against the accused on the lesser included offense. The evidence demonstrated that defendant planned to get S.N. intoxicated so that he could have sex with one of them. He purchased alcohol and invited them into the abandoned house and then gave S.N. alcohol. This evidence does not reasonably support an acquittal on the crime of rape as it could reasonably be concluded that defendant knew that S.N.'s ability to resist or consent was impaired due to the physical condition of intoxication since he administered the alcohol and could observe her behavior. Further, the evidence does not reasonably support an acquittal on the crime of rape as S.N. became so intoxicated that she had to be treated for this condition before the rape examination could proceed, thus establishing that her ability to resist or consent was substantially impaired. A *Page 10 
reasonable jury could conclude that S.N.'s ability to appraise the nature of her conduct or control her conduct was substantially impaired. Thus, there was no plain error in the trial court's failure to provide an instruction on sexual battery.
 {¶ 24} This assignment of error is without merit.
 {¶ 25} Defendant's second assignment of error states:
 {¶ 26} "Defendant failed to receive the effective assistance of counsel, in violation of his rights under the Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution."
 {¶ 27} In this assigned error, defendant claims that his trial counsel rendered ineffective assistance when he failed to seek an instruction on sexual battery as a lesser included offense of rape as charged in Count Two. As we have determined that such instruction was not warranted in this matter, there is no trial error and the claim of ineffective assistance must therefore fail. See State v. Henderson (1988),39 Ohio St.3d 24, 33, 528 N.E.2d 1237. In any event, this was not consistent with the defense theory offered above.
 {¶ 28} Defendant's third assignment of error states:
 {¶ 29} "The trial court's designation of Defendant as a sexual predator was not supported by sufficient evidence."
 {¶ 30} A sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). *Page 11 
 {¶ 31} The law in effect at the time of defendant's sexual predator classification required that the trial court conduct a sexual predator hearing in the manner described in R.C. 2950.09(B)(1) before adjudicating an offender a sexual predator. (R.C. 2950.09 was repealed effective January 1, 2008.)[2]
 {¶ 32} The law further required that in making a sexual predator determination, the trial court was to consider all relevant factors, including, but not limited to the factors enumerated in R.C. 2950.09(B)(3):
 {¶ 33} "(a) The offender's age;
 {¶ 34} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 35} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 36} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 37} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 38} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the *Page 12 
prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 39} "(g) Any mental illness or mental disability of the offender;
 {¶ 40} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 41} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 42} "(j) Any additional behavioral characteristics that contribute to the offender's conduct." See R.C. 2950.09.
 {¶ 43} This statute does not mandate that each factor be satisfied; instead, it simply requires the trial court to consider all the factors which are relevant to its determination. State v. McBooth, Cuyahoga App. No. 85209, 2005-Ohio-3592.
 {¶ 44} Because sex offender classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex offender classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the trial judge's findings are supported by some competent, credible evidence. State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, *Page 13 865 N.E.2d 1264.
 {¶ 45} Where the determination is based upon a single offense it may be upheld if there is clear and convincing evidence that the offender is likely to engage in the future in one or more sexually oriented offenses. See State v. Mruk, Lucas App. No. L-04-1213, 2006-Ohio-590;State v. Senyak (Feb. 11, 1999), Cuyahoga App. No. 72611.
 {¶ 46} In this matter, the trial court concluded and the record establishes that defendant inquired of Brendan Ragin whether the girls at the house were sexually active, then fashioned a plan to supply them with liquor in order to engage in sexual relations with one of them. The record further establishes that defendant obtained liquor, then let the group into the abandoned home. The record further indicates that S.N. then became visibly intoxicated. Defendant began to touch her inappropriately, but she could not effectively stop him. S.N. went to find a restroom and defendant then engaged in sexual relations with her while she protested and tried unsuccessfully to get away. Defendant ejaculated in her face and left her crying and in pain.
 {¶ 47} From the foregoing, the trial judge's findings are supported by some competent, credible evidence and the court properly concluded that defendant is a sexual predator as he acted in a predatory manner in light of the alcohol, the planning, and the age of the victim.
 {¶ 48} This assignment of error lacks merit. *Page 14 
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., CONCURS COLLEEN CONWAY COONEY, P.J., CONCURS IN JUDGMENT ONLY
[1] This court in State v. Bryan (1998), 127 Ohio App.3d 573,713 N.E.2d 494, determined that sexual battery under R.C. 2907.03 (A)(2) is not a lesser included offense of rape under R.C. 2907.02(A)(1)(a).
[2] The current state of sexual offender classifications in Ohio Senate Bill 10, which became effective January 1, 2008, authorizes the Attorney General to determine the classification of each offender subject to registration under a three-tiered system. See R.C. 2950.031. *Page 1