[Cite as *State v. Burks*, 2018-Ohio-4777.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 106639

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DARYL BURKS**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-611300-A

**BEFORE:** Celebrezze, J., Kilbane, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** November 29, 2018

**ATTORNEY FOR APPELLANT**

Kevin M. Cafferkey
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Jennifer A. Driscoll
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Defendant-appellant, Daryl Burks ("appellant"), brings the instant appeal challenging his convictions and the trial court's sentence for extortion, intimidation of a crime victim, and pandering obscenity. Specifically, appellant argues that the trial court erred by denying his motion to dismiss based on speedy trial grounds, his convictions are not supported by sufficient evidence and against the manifest weight of the evidence, the trial court erred by failing to merge the extortion and intimidation counts for sentencing purposes, and the trial court erred by imposing consecutive sentences. After a thorough review of the record and law, this court affirms.

## I.   Factual and Procedural History

**{¶2}** The instant matter arose from an October 29, 2016 incident involving appellant, his codefendant Raynard Rivers, and the victim, C.E., following a birthday party. The party was

hosted by Chermetria Rivers.

{¶3} At some point during the evening, a group of partygoers left the house at which the party was being held and went to the No Drama Bar and Lounge in Cleveland, Ohio, where they only stayed for a short period of time. The group returned to Chermetria's house where they continued to party.

{¶4} Throughout the course of the evening, the victim became intoxicated. The victim's second cousin, Nautica Redfern (hereinafter "Nautica"), opined that the victim consumed more than ten shots after the group had returned from the bar. Nautica explained that the victim vomited in the bathroom and fell when she exited the bathroom. Nautica, appellant, and Raynard all had to help the victim get up off the floor and guide her outside the house. The victim fell a second time when she was walking down the steps outside of the home.

{¶5} Appellant agreed to give the victim a ride home from the party. Raynard was in the front passenger's seat of appellant's vehicle, and the victim and Nautica were in the backseat. Appellant first stopped at Nautica's apartment, where the victim got out of the vehicle and vomited for the second time. Nautica and Raynard exited appellant's vehicle and went upstairs to Nautica's apartment, leaving only appellant and the victim in the vehicle. Appellant drove the vehicle behind the apartment building, got into the backseat of the car, pulled down the victim's pants, and had sexual intercourse with her. At some point while Nautica was upstairs in her apartment, Raynard returned to appellant's vehicle and also engaged in sexual intercourse with the victim.

{¶6} Appellant proceeded to drive the victim home to her apartment. Upon arrival, Raynard helped the victim out of appellant's vehicle and escorted her upstairs into her apartment. The following day, before going into work, the victim told her boyfriend and Nautica that

appellant raped her.

{¶7} Nautica testified that she received phone calls from appellant the morning after the party. She explained that appellant "basically [told] me to tell [the victim] to stop making up rumors about him raping her." (Tr. 320.) Appellant told Nautica that he did not rape the victim, and that they had consensual sex. Appellant advised Nautica, "[w]ell, you better tell [the victim] to tell the truth before I put these videos out." (Tr. 320.) Nautica asked appellant what videos he was referring to. Appellant told Nautica that he had two videos: (1) a video of him and the victim having sex, and (2) a video of Raynard and the victim having sex. Appellant believed that he was only speaking with Nautica during this phone call. However, the victim's guardian Marcy Ivory, Chermetria Rivers, and Leslie Rivers were also on the line listening to the conversation.

{¶8} Appellant sent both videos to Nautica's Facebook inbox. Before sending the videos to Nautica, however, appellant had already posted the video of the victim and Raynard on his Facebook page. Nautica testified that appellant threatened the victim with the videos: "Tell [the victim] to stop lying or I'm going to put these videos out here." (Tr. 323.) According to Chermetria, appellant indicated that he would "expose" the victim at 6:00 p.m. if she did not stop saying that he raped her. (Tr. 365.) After speaking with appellant about the videos, Nautica called the victim and "told her what [appellant] said." (Tr. 325.)

{¶9} While the victim was at work, she received a phone call from Nautica during which Nautica informed her that appellant wanted to speak with her. The victim explained that she did not want to speak with appellant. The victim further asserted, "[Nautica] called me and threatened me [to] drop the charges on [appellant] or he would tell on Facebook." (Tr. 450.) The victim testified that she did not know that there were any videos taken the night of the party.

**{¶10}** While the victim was at work, she saw a video, which had been posted on Facebook, of Raynard "trying to put his penis in[side her vagina.]" (Tr. 452-453.) The victim explained that she had no recollection of Raynard attempting to insert his penis inside of her on the night of the party.

**{¶11}** A second video was recorded on the night of the party. This video showed appellant having sex with the victim. The victim testified that she had not seen this video of appellant and her prior to appellant's trial. (Tr. 455.)

**{¶12}** After her shift, the victim went to the hospital with Ivory and her boyfriend. Sexual Assault Nurse Examiner Denise Robinson administered a rape kit examination. The victim advised Robinson that she had been raped by appellant. Thereafter, the victim spoke with officers from the Cleveland Heights Police Department. She advised the officers that both appellant and Raynard raped her. Officer Jemond Riffe prepared a report based on his conversation with the victim.

**{¶13}** Detective Craig Schoffstall interviewed the victim and Ivory on November 2, 2016. During this interview, Ivory showed Detective Schoffstall the video of Raynard and the victim. Appellant gave the investigators consent to search his phone. The phone was sent for forensic analysis, but the videos of Raynard and appellant engaging in sexual intercourse with the victim were not recovered.

**{¶14}** Appellant was arrested on December 7, 2016. On December 28, 2016, in Cuyahoga C.P. No. CR-16-611300-A, the Cuyahoga County Grand Jury returned a five-count indictment charging appellant with: (1) rape, in violation of R.C. 2907.02(A)(1)(c); (2) kidnapping, in violation of R.C. 2905.01(A)(4); (3) extortion, in violation of R.C. 2905.11(A)(5); (4) intimidation of a crime victim or witness, in violation of R.C. 2921.04(B)(1); and (5)

pandering obscenity, in violation of R.C. 2907.32(A)(1). Raynard was also charged as a codefendant in CR-16-611300-B for his involvement in the October 29, 2016 incident. Raynard pled guilty on July 26, 2017, to attempted kidnapping and extortion, and the trial court sentenced Raynard to a prison term of four years.

{¶15} Appellant was arraigned on January 3, 2017. He pled not guilty to the indictment.

{¶16} Prior to the commencement of trial, defense counsel moved to dismiss the case on speedy trial grounds. The trial court denied defense counsel's motion, concluding that appellant's speedy trial time had not expired.

{¶17} A jury trial commenced on November 27, 2017. At the close of trial, the jury returned its verdict on November 30, 2017. The jury found appellant not guilty on the rape and kidnapping counts. The jury found appellant guilty of the extortion, intimidation of a crime victim, and pandering obscenity counts.

{¶18} The trial court held a sentencing hearing on December 5, 2017. The trial court sentenced appellant to a prison term of seven years: three years on the extortion count, three years on the intimidation count, and one year on the pandering obscenity count. The trial court ordered the counts to run consecutively.

{¶19} The trial court also found appellant in violation of his postrelease control in Cuyahoga C.P. No. CR-12-565610-A. The trial court terminated appellant's postrelease control and ordered him to serve the remaining balance of his term or one year, whichever is greater, in prison. The court ordered the sentence for violating postrelease control to run consecutively to the prison sentence on the extortion, intimidation, and pandering obscenity counts. Finally, based on appellant's pandering obscenity conviction, the trial court classified appellant as a Tier I sex offender and reviewed his reporting requirements.

**{¶20}** Appellant filed the instant appeal challenging his convictions and the trial court's sentence on December 21, 2017. He assigns six errors for review:

I. The trial court erred in denying the defendant's motion to dismiss.

II. The state of Ohio failed to present sufficient evidence to support the conviction of extortion and Burks' conviction of Count 3 is against the manifest weight of the evidence.

III. The state of Ohio failed to present sufficient evidence to support the conviction of intimidating a crime victim witness and Burks' conviction in Count 4 is against the manifest weight of the evidence.

IV. The state of Ohio failed to present sufficient evidence to support the conviction of pandering obscenity and Burks' conviction in Count 5 is against the manifest weight of the evidence.

V. The trial court erred when it failed to merge Count 3 extortion and Count 4 intimidating a crime victim witness.

VI. The trial court erred when it imposed a consecutive sentence of imprisonment.

## II. Law and Analysis

### A. Speedy Trial

**{¶21}** In his first assignment of error, appellant argues that the trial court erred by denying defense counsel's motion to dismiss based on speedy trial grounds.

### 1. Standard of Review

**{¶22}** Appellate review of a trial court's decision on a motion to dismiss for a speedy trial violation raises a mixed question of law and fact. *State v. Loder*, 8th Dist. Cuyahoga Nos. 93242 and 93865, 2010-Ohio-3085, ¶ 9, citing *State v. Easley*, 4th Dist. Scioto No. 03CA2910, 2005-Ohio-767. This court applies a de novo review to the legal issues, and independently determines whether the trial court correctly applied the law to the facts of the case. *Loder* at *id.*

However, we afford great deference to the trial court's findings of fact, if any, if the factual findings are supported by competent, credible evidence. *Id.* When reviewing the legal issues presented in a speedy trial claim, we are required to strictly construe the relevant statutes against the state. *Id.*, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶23} In *State v. Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883 (1997), the Ohio Supreme Court discussed the constitutional and statutory rights to a speedy trial.

> The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. The individual states are obligated under the Fourteenth Amendment to afford a person accused of a crime such a right. *Klopfer v. North Carolina*, 386 U.S. 213, 222-223, 87 S.Ct. 988, 18 L.Ed.2d 1, 7-8 (1967). However, the states are free to prescribe a reasonable period of time to conform to constitutional requirements. *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In response to this constitutional mandate, Ohio has enacted R.C. 2945.71 to 2945.73, which designate specific time requirements for the state to bring an accused to trial.

*Id.* at 110.

{¶24} In the instant matter, appellant appears to argue that both his constitutional and statutory speedy trial rights were violated. However, a careful review of appellant's brief reveals that his speedy trial claim focuses on his statutory speedy trial rights under R.C. 2945.71, rather than his constitutional speedy trial rights.

## 2. Statutory Speedy Trial Right

{¶25} Appellant contends that the statutory speedy trial time set forth in R.C. 2945.71 to 2945.73 expired before he was brought to trial. On November 27, 2017, before the trial court began empaneling the jury, defense counsel moved to dismiss the case on speedy trial grounds, arguing that more than 320 days had elapsed since December 7, 2016, when appellant was arrested.

**{¶26}** Pursuant to R.C. 2945.71(C)(2), "the state is required to bring a defendant to trial on felony charges within 270 days of arrest." *State v. Martin*, 8th Dist. Cuyahoga No. 106038, 2018-Ohio-1843, ¶ 43, citing *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 19. The "triple count provision" set forth in R.C. 2945.71(E), however, provides that each day a defendant is held in jail in lieu of bail counts as three days for purposes of calculating speedy trial time. *Geraci* at *id*. Furthermore, R.C. 2945.72 provides that speedy trial time may be tolled by certain events, including a defendant's requests for continuances and any actions or neglect of the defendant that causes delay.

**{¶27}** In the instant matter, appellant was arrested on December 7, 2016. Appellant was incarcerated while awaiting trial. Accordingly, pursuant to the "triple count provision" of R.C. 2945.71(E), the state was required to bring appellant to trial within 90 days. However, the triple count provision is inapplicable when the accused is held in jail under a valid parole holder. *See State v. Glover*, 8th Dist. Cuyahoga No. 89059, 2007-Ohio-5727, ¶ 3, citing *State v. Brown*, 64 Ohio St.3d 476, 479, 597 N.E.2d 97 (1992).

**{¶28}** In response to defense counsel's motion to dismiss, the prosecutor stated, in relevant part, "I do believe that [appellant] does have a parole holder that's out there, first and foremost." (Tr. 97.) The prosecutor further argued that appellant's speedy trial time was tolled by (1) the defense's motion for a bill of particulars and motion for discovery, filed on January 4, 2017, (2) other events, such as continuances and pretrial hearings, that occurred between January 4 and June 26, 2017, when the state requested a continuance due to the prosecutor's unavailability, (3) appellant's pro se motion to dismiss, filed on February 28, which was still pending, and (4) defense counsel's failure to respond to the state's demand for discovery, filed on February 8, 2017.

**{¶29}** After the prosecutor opined that appellant had a parole holder, the trial court confirmed that appellant did, in fact, have an APA1 hold in Cuyahoga C.P. Nos. CR-13-571228-A and CR-12-565610-A, and that appellant was on postrelease control in CR-12-565610 when the charges in the instant case arose. (Tr. 97-98.) In denying the motion to dismiss, the trial court concluded, "the speedy trial time of [appellant] has not run. He is on — That's with the finding that he is on Post-Release Control in the State of Ohio, so he's running one for one not three for one, and the discovery and other motions that have been filed by the defense." (Tr. 99-100.)

**{¶30}** In this appeal, appellant argues that the trial court erred in determining that the triple count provision did not apply because the state failed to produce any testimony or documentation in support of its assertion that appellant had a parole holder.

**{¶31}** The state acknowledges that it did not produce a factual finding, a copy of a parole holder, or a judgment entry confirming that appellant did, in fact, have a parole holder during the trial court's November 27, 2017 hearing on defense counsel's motion to dismiss. Nevertheless, the state argues that the transcript from the hearing provides this court with a sufficient basis to conclude that (1) appellant had a valid parole holder and (2) the triple count provision was inapplicable. In support of its argument, the state directs this court to *Glover*, 8th Dist. Cuyahoga No. 89059, 2007-Ohio-5727.

**{¶32}** In *Glover*, this court explained,

> There is not a copy of a parole holder in the record and, although the trial court issued an entry denying Glover's motion to dismiss, the entry did not list the grounds for denial. However, in the absence of a copy of a parole holder, or filed findings of fact and a judgment entry memorializing a ruling regarding a parole holder, the transcript of the trial court's hearing can provide sufficient evidence of a valid parole holder. *State v. Adkins*, [8th Dist. Cuyahoga No. 70326, 1997 Ohio App. LEXIS 1314 (Apr. 3, 1997)], citing *Brown*, [64 Ohio St.3d at 479, 597

N.E.2d 97]; [*State v. Ballow*, 9th Dist. Medina No. 2527-M, 1996 Ohio App. LEXIS 2807 (July 3, 1996)].

Our review of the trial transcript indicates that the trial judge denied Glover's motion to dismiss because, in addition to the various continuances requested by Glover, "there was and is an Adult Parole Authority holder on the defendant concerning the case for which he's on, or was on parole." No one objected to the trial court's characterization or challenged the existence of the parole holder. Accordingly, the record in this case provides us with a sufficient basis to conclude that there was, in fact, a valid parole holder on Glover and, therefore, the triple-count provisions of the speedy trial statute did not apply.

*Glover* at ¶ 4-5.

{¶33} Here, as noted above, the trial court denied defense counsel's motion to dismiss on the basis that appellant had parole holders in two criminal cases, CR-13-571228 and CR-12-565610, and that appellant was on postrelease control in CR-12-565610 when he was charged with the offenses arising from the October 29, 2016 incident. Although the state did not produce a copy of appellant's parole holders during the November 27, 2017 hearing, and there is not a copy of the parole holders in the record before this court, we find, like *Glover*, that the transcript from the November 27, 2017 proceedings provides us with a sufficient basis to conclude that appellant had a valid parole holder, making the triple count provision inapplicable. Finally, defense counsel did not object to the prosecutor's assertion that appellant had a parole holder, or dispute the existence of a parole holder. Accordingly, we find no merit to appellant's assertion that the trial court erred in determining that he was not entitled to the triple count provision under R.C. 2945.71(E) based on his parole holders.

{¶34} As noted above, appellant was arrested on December 7, 2016. Because the triple count provision did not apply, the state had 270 days within which to bring appellant to trial. The statutory speedy trial period would have expired, if not extended, on September 4, 2017.

{¶35} Appellant's trial commenced on November 27, 2017 — 355 days after he was

arrested. After reviewing the record, however, we find that appellant's statutory speedy trial right was not violated because speedy trial time was tolled by the defense's requests for continuances and appellant's neglect in failing to respond to the state's discovery demand.

{¶36} The record reflects that defense counsel filed a demand for discovery and a motion for bill of particulars on January 4, 2017. A defendant's demand for discovery tolls the speedy trial time until the state responds to the discovery, or for a reasonable time, whichever is sooner. *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 26, 31; R.C. 2945.72(E). The state served its response to appellant's discovery request on February 7, 2017. Accordingly, speedy trial time was tolled from January 4 to February 7, 2017. The record additionally reflects that the matter was continued at defense counsel's request at various points from January 2017 through August 2017.

{¶37} The state filed its demand for discovery on February 8, 2017. The record reflects that the defense did not respond to the state's discovery request. The failure of a criminal defendant to respond within a reasonable time to the state's request for reciprocal discovery constitutes neglect that tolls the running of speedy trial time pursuant to R.C. 2945.72(D). *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, paragraph one of the syllabus.

> Under most circumstances, 30 days is generally considered to be a reasonable time to respond. [*Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, at ¶ 26]; *see also Palmer* at paragraph three of the syllabus (determination of reasonable response time is based on the totality of the circumstances).

*State v. Michailides*, 8th Dist. Cuyahoga No. 105966, 2018-Ohio-2399, ¶ 17.

{¶38} In this case, using 30 days as a reasonable response time, appellant's speedy trial time ran from February 8, when the state served its demand for discovery, until March 8, 2017,

when appellant reasonably should have responded to the state's discovery demand, for a total of 30 speedy trial days. Thereafter, the speedy trial time was tolled due to appellant's neglect in failing to respond to the state's discovery demand. *Geraci* at *id.*, citing *Palmer* at paragraph one of the syllabus; *State v. Gibson*, 8th Dist. Cuyahoga No. 100727, 2014-Ohio-3421, ¶ 23.

{¶39} Based on the foregoing analysis, appellant's statutory speedy trial rights were not violated.

### 3. Constitutional Right to a Speedy Trial

{¶40} Although appellant raises a statutory rather than a constitutional speedy trial claim, we find that appellant's constitutional right to a speedy trial was not violated in this matter.

{¶41} In determining whether a constitutional speedy trial violation exists, this court balances four factors: (1) the length of the delay, (2) the reason for the delay, (3) the accused's assertion of his or her right to a speedy trial, and (4) the prejudice to the accused as a result of the delay. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. "'The first factor, the length of the delay, is a "triggering mechanism," determining the necessity of inquiry into the other factors.'" *State v. Robinson*, 8th Dist. Cuyahoga No. 105243, 2017-Ohio-6895, ¶ 9, quoting *State v. Triplett*, 78 Ohio St.3d 566, 569, 679 N.E.2d 290 (1997), citing *Barker* at *id*. In order to trigger the analysis of the second, third, and fourth *Barker* factors, the defendant must make a threshold showing of a "presumptively prejudicial" delay. *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). "Post-accusation delay approaching one year is generally found to be presumptively prejudicial." *Robinson* at *id*., quoting *Doggett* at fn. 1.

{¶42} In the instant matter, appellant was indicted on December 28, 2016, and his jury trial commenced roughly 11 months later, on November 27, 2017. During this time period,

discovery and plea negotiations were ongoing. Appellant does not argue that this 11-month delay was presumptively prejudicial. Nevertheless, assuming, arguendo, that appellant met the threshold showing of a presumptively prejudicial delay, we cannot say that appellant's constitutional speedy trial rights were violated after balancing the other *Barker* factors.

{¶43} As noted above, the matter was continued at defense counsel's request at various points from January 2017 through August 2017. During this time period, a total of 14 pretrial hearings were set and/or held at the request of the defense. Furthermore, the originally set trial date of April 24, 2017, was continued at the request of the defense. Finally, appellant has not alleged, much less demonstrated, any prejudice resulting from the 11-month delay between the indictment and the commencement of trial. Accordingly, there was no violation of appellant's constitutional speedy trial rights.

{¶44} For all of the foregoing reasons, appellant's first assignment of error is overruled. Appellant's statutory and constitutional speedy trial rights were not violated.

## B. Sufficiency and Manifest Weight

{¶45} In his second, third, and fourth assignments of error, appellant argues that his convictions for extortion, intimidation of a crime victim, and pandering obscenity were not supported by sufficient evidence and against the manifest weight of the evidence.

### 1. Standard of Review

{¶46} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven

beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶47}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden* at *id*. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 388. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶48}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

### 2. Extortion

**{¶49}** Appellant was convicted of extortion, in violation of R.C. 2905.11(A)(5), which provides:

(A) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:

(5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit.

R.C. 2905.11(A)(5)(c) provides that a "'threat' includes a direct threat and a threat by innuendo."

{¶50} In support of his sufficiency challenge, appellant argues that (1) the state failed to prove that he released the video of the events that transpired inside the vehicle for any purpose other than "to exonerate himself and Raynard Rivers of the false rape allegation(s) the alleged victim made"; (2) the victim did not explain how her reputation was damaged by the Facebook post; (3) the state failed to prove that he made an "unlawful threat"; and (4) it was Nautica, not appellant, who passed the message to the victim. Appellant's brief at 15-16.

{¶51} Regarding appellant's argument that he posted the video on Facebook in order to defend against the victim's allegations and show that the sexual encounter with the victim was consensual, "[t]he truth is no defense to a charge of extortion." *State v. Workman*, 14 Ohio App.3d 385, 390, 471 N.E.2d 853 (8th Dist.1984). In *Workman*, the defendant-appellant sent a letter to a witness, the victim's mother, and attempted to argue that he could not be convicted of extortion because the contents of the letter were true. This court rejected the appellant's argument, explaining, "[e]ven if the contents of the appellant's letter were completely true, that would not serve as a defense to a charge of extortion. Statements can be true and still cause ridicule, contempt, and damage to a person's reputation." *Id.*

{¶52} Here, even if appellant posted the video in order to defend against the victim's allegations and demonstrate that the sexual conduct was consensual, appellant cannot defend against the extortion charge on this basis because the video displaying the sexual encounter

between the victim and Raynard — whether or not it was consensual — would still undoubtedly cause ridicule, contempt, and damage to the victim's reputation. The record reflects that the victim was intoxicated at the time that the sexual conduct between her, appellant, and Raynard occurred. The victim did not know that there were video recordings of the sexual conduct, or that the videos were retained by appellant. Finally, the victim and Raynard are cousins. (*See* tr. 302, 401.) Under these circumstances, we find that the publication of the videos, particularly on a popular social media website like Facebook, would undeniably subject the victim to ridicule, contempt, and damage her reputation.

{¶53} In support of his argument that the state failed to prove that he made an unlawful threat to the victim, appellant emphasizes that he never spoke with the victim directly after the October 29, 2016 incident. Furthermore, appellant appears to argue that he delivered a message, rather than an unlawful threat, to Nautica, who in turn, passed this message along to the victim. We find no merit to these arguments.

{¶54} Nautica testified that appellant used the videos to threaten the victim. She explained that the day after the October 29, 2016 incident, appellant said to her, "[t]ell that b[***]h to stop lying [about what transpired inside the vehicle] or I'm going to put these videos out here." (Tr. 324.) After she spoke with appellant, Nautica testified that she called the victim and told her what appellant said about posting the videos.

{¶55} In addition to Nautica's testimony, the victim testified, "[Nautica] called me and threatened me [to] drop the charges on [appellant] or he would tell on Facebook." (Tr. 450.) The victim confirmed on direct examination that it was appellant, not Nautica, that threatened her:

Q. So did [Nautica] threaten you or did [appellant] threaten you?

A. [Appellant].

Q. [Appellant] threatened you?

A. Yes.

(Tr. 450.)

**{¶56}** After reviewing the record, we find that the testimony of Nautica and the victim, if believed, was sufficient to support appellant's conviction for extortion. Appellant's statement to Nautica — that he would post the videos of the victim engaging in sexual conduct with him and Raynard on Facebook if she did not "stop lying" about what transpired inside the vehicle — constitutes a direct threat. Furthermore, it is inconsequential that appellant delivered this threat to Nautica, the victim's second cousin, rather than to the victim directly. *See State v. Lemons*, 8th Dist. Cuyahoga No. 101361, 2015-Ohio-2382, ¶ 58-59, citing *State v. Long*, 1st Dist. Hamilton No. C-790354, 1980 Ohio App. LEXIS 10503, 8 (Apr. 16, 1980) (appellant's conviction for extortion was supported by sufficient evidence where he sent an email to the victim's father insinuating that he would "expose [the victim's] entire family," subject the victim to ridicule, and damage the victim's personal reputation.).

**{¶57}** Finally, to the extent that appellant argues that he did not threaten to post the videos in order to obtain any valuable thing or valuable benefit, we find no merit to this argument. In *Workman*, the defendant-appellant essentially threatened to expose embarrassing stories about the victim's mother unless she decided not to testify against him at his trial on charges of kidnapping, attempted rape, intimidation, and extortion. *Workman,* 14 Ohio App.3d at 393, 471 N.E.2d 853. This court recognized that the victim's mother's "failure to testify against him [at trial] would have been of tremendous value to the appellant." *Id.*

**{¶58}** Here, like *Workman*, appellant threatened to expose videos of him and Raynard engaging in sexual conduct with the victim unless the victim refrained from discussing what transpired inside the vehicle and/or alleging that the sexual conduct was not consensual. The victim's failure to speak about the incident or report the incident to the police would have been of tremendous value to appellant.

**{¶59}** Based on the foregoing analysis, we find that appellant's extortion conviction is supported by sufficient evidence.

**{¶60}** Regarding appellant's manifest weight challenge, he does not develop a separate argument with respect to the manifest weight of the evidence. Rather, appellant's entire argument focuses on whether there was sufficient evidence supporting his extortion conviction. *See Cleveland v. Hall*, 8th Dist. Cuyahoga No. 101820, 2015-Ohio-2698, ¶ 14, citing App.R. 16(A)(7) (this court disregarded appellant's assignment of error concerning the sufficiency of the evidence and only addressed the issues relating to the manifest weight of the evidence because the appellant did not make a specific argument regarding why the convictions were not supported by sufficient evidence, in violation of App.R. 16(A)(7)).

**{¶61}** Appellant does, however, argue that the content of the message that he conveyed to Nautica, which was then relayed to the victim, was "unclear and multiple different versions were given as to what was said during this one phone call." Appellant's brief at 16. This assertion arguably raises a manifest weight issue.

**{¶62}** As noted above, Ivory, Chermetria, and Leslie were listening to the phone call between appellant and Nautica. Nautica, Ivory, Chermetria, and Leslie testified at trial regarding this conversation.

**{¶63}** Chermetria testified that she heard appellant talking about the events that transpired inside the vehicle the night before during a phone call at approximately 4:00 or 4:30 p.m. (Tr. 365.) She explained that five people were involved with the phone call: herself, Nautica, Leslie, appellant, and Ivory. Chermetria testified that during the phone call, appellant stated, "if [the victim] don't stop saying that he raped her, then he was going to expose her." (Tr. 365.) Chermetria asserted that appellant indicated he would "expose" the victim at 6:00 p.m.

**{¶64}** Leslie testified that she was involved in a "three-way call" the day after the October 29, 2016 incident with Chermetria and Ivory. (Tr. 291-292.) She received a phone call from Nautica, and to which Nautica connected Leslie, Chermetria, and Ivory. Leslie recognized appellant's voice on the phone with Nautica. Leslie testified that during the phone call, appellant was "very cocky," and he was making a joke and laughing about the incident that transpired with the victim the night before. Appellant further stated that the victim should not have gotten drunk. Leslie testified that appellant stated, "if the B doesn't stop talking I raped her I'm going to release the video on social media." (Tr. 297-298.) She confirmed that appellant stated, "[i]f the b[****] doesn't stop talking I'm going to release the video at a certain time." (Tr. 298.) Leslie did not respond to appellant's assertions because he did not know she was on the line listening to the conversation. Leslie opined that this phone call took place after midnight, around 1:00 a.m.

**{¶65}** Ivory testified that she got "tagged in" to the phone call between Nautica and appellant. Leslie and Chermetria also joined the phone call. She explained that during the phone call, appellant "is like making fun of basically what had happened and was saying like, [t]hat b[****] better not say anything or I'm going to release this video." (Tr. 422.) Ivory continued, "I just recall that [the victim] had to 6 o'clock p.m. to not say anything or not go to the

police or something like that. [Appellant is] giving her until 6 o'clock and call and say she's not or he was going to release the video also." (Tr. 423-424.)

{¶66} After reviewing the record, we cannot say that appellant's conviction for extortion is against the manifest weight of the evidence. There were minor inconsistencies in the witnesses' testimony about the phone call, for instance, the time at which the conversation took place or the exact words that appellant used in communicating the threat to Nautica. These minor inconsistencies, however, do not cast serious doubt on appellant's role in communicating the threat to Nautica. The important aspects of their testimony regarding the threat that appellant conveyed to Nautica were consistent with one another.

{¶67} The jury heard the witnesses' testimony and was able to take into account any inconsistencies and to assess the credibility of the witnesses. We cannot say that this is the exceptional case where the evidence weighs heavily against the conviction for extortion, nor that the jury clearly lost its way and created a manifest miscarriage of justice.

{¶68} For all of the foregoing reasons, appellant's second assignment of error is overruled.

### 3. Intimidating a Crime Victim

{¶69} Appellant was convicted of intimidating a crime victim, in violation of R.C. 2921.04(B)(1), which provides,

> (B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:
>
> (1) The victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding[.]

**{¶70}** In support of his sufficiency challenge, appellant argues that he never threatened the victim after they had sex, he never made an unlawful threat of harm against the victim, and that the victim did not testify that she was in fear of appellant. He appears to argue that he did not threaten the victim, but merely requested that she tell the truth about what transpired inside the vehicle.

**{¶71}** After reviewing the record, we find that the state's evidence, if believed, was sufficient to support appellant's intimidation conviction. It is undisputed that appellant did not attempt to use physical force or threaten to inflict physical harm to the victim in an attempt to intimidate or influence the victim in the prosecution of criminal charges. However, the record reflects that appellant unlawfully threatened to commit the offense of pandering obscenity against the victim.

**{¶72}** As noted above, appellant advised Nautica that he would post the videos of the victim engaging in sexual conduct with him and Raynard on Facebook if she continued to tell people that she was raped. As will be discussed below in the analysis of appellant's fourth assignment of error, posting a video of such obscene material constitutes a violation of R.C. 2907.32(A)(1).

**{¶73}** Finally, regarding appellant's argument that the state failed to establish that the victim was in fear of him, this argument is misplaced.

> R.C. 2921.04(B) requires only an attempt to influence, intimidate, or hinder. "[T]he defendant need only try to create fear about or try to influence or hinder the filing or prosecution of criminal charges." *State v. Thompson*, 7th Dist. Columbiana No. 13 CO 20, 2014-Ohio-1225, ¶ 16, citing R.C. 2921.04(B). There is no requirement that the victim actually feel intimidated. *Thompson* at *id.*, citing *State v. Williams*, 8th Dist. Cuyahoga No. 94261, 2011-Ohio-591, ¶ 14 ("[n]othing in the statute requires the victim to even know that the defendant attempted to intimidate the witness").

*State v. Serrano*, 2016-Ohio-4691, 69 N.E.3d 87, ¶ 44 (8th Dist.).

**{¶74}** The state was only required to show that appellant knowingly by unlawful threat to commit any offense against the victim attempted to influence, intimidate, or hinder the victim in reporting and/or prosecuting the case. We find that the state met its burden of production in this respect because the testimony of Nautica and the victim demonstrated that appellant knowingly threatened to commit the offense of pandering obscenity against the victim in an attempt to influence, intimidate, or hinder the victim from discussing the events that transpired on the night of the party.

**{¶75}** Based on the foregoing analysis, appellant's intimidation conviction is supported by sufficient evidence.

**{¶76}** Regarding appellant's manifest weight challenge, he does not develop a separate argument with respect to the manifest weight of the evidence. Rather, appellant's entire argument focuses on whether there was sufficient evidence supporting his intimidation conviction. Nevertheless, after reviewing the record, we cannot say that this is the exceptional case where the evidence weighs heavily against the conviction for intimidation, nor that the jury clearly lost its way and created a manifest miscarriage of justice. Therefore, appellant's intimidation conviction is not against the manifest weight of the evidence.

**{¶77}** Accordingly, appellant's third assignment of error is overruled.

### 4. Pandering Obscenity

**{¶78}** Appellant was convicted of pandering obscenity in violation of R.C. 2907.32(A)(1), which provides,

(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

(1) Create, reproduce, or publish any obscene material, when the offender knows that the material is to be used for commercial exploitation *or* will be publicly disseminated or displayed, or when the offender is reckless in that regard[.]

(Emphasis added.)

{¶79} R.C. 2907.01(F) provides, in relevant part, that material is obscene if,

[w]hen considered as a whole, and judged with reference to ordinary adults * * * any of the following apply:

(1) Its dominant appeal is to prurient interest;

(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;

(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.

{¶80} R.C. 2907.01(J) defines "material" as

any book, magazine, newspaper, pamphlet, poster, print, picture, figure, image, description, motion picture film, phonographic record, or tape, or other tangible thing capable of arousing interest through sight, sound, or touch and includes an image or text appearing on a computer monitor, television screen, liquid crystal display, or similar display device or an image or text recorded on a computer hard disk, computer floppy disk, compact disk, magnetic tape, or similar data storage device.

{¶81} R.C. 2907.01(A) defines "sexual conduct" as

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶82} In support of his sufficiency challenge, appellant argues that posting the video of the victim and Raynard engaging in sexual conduct does not constitute pandering obscenity because the video was not used for commercial exploitation. Appellant's argument is misplaced.

{¶83} R.C. 2907.32(A)(1) does not require that the obscene material be created, reproduced, or published for commercial exploitation. It is also a violation of the statute for an offender to create, reproduce, or publish the obscene material when the offender (1) knows that the material will be publicly disseminated or displayed, or (2) is reckless in that regard.

{¶84} Appellant further argues that he did not post the video on Facebook in order to arouse lust, but rather to defend against the victim's rape allegations and demonstrate that the sexual conduct was consensual. Again, appellant's argument is misplaced.

{¶85} The state was not required to prove that appellant posted the video on Facebook in order to arouse lust. Rather, pursuant to R.C. 2907.01(F), the material is obscene when its dominant tendency is to arouse lust "[w]hen considered as a whole, and judged with reference to *ordinary adults*[.]" (Emphasis added.) Thus, for purposes of R.C. 2907.32 and 2907.01, it is not relevant whether appellant believed the video aroused lust, or whether he posted the video in order to arouse lust in viewers.

**{¶86}** After reviewing the record, we find that the state's evidence, if believed, is sufficient to support appellant's conviction for pandering obscenity. The victim testified that the video appellant posted on Facebook showed Raynard trying to insert his penis inside of her. Leslie testified that the video showed "[the victim] facedown in the seat of the car and she was kind of out of it, and [Raynard] pulled her pants down — she was on her stomach and he pulled her pants down and they were on top of her from behind." (Tr. 304.) Detective Schoffstall testified that Ivory showed him a video, and the video "showed the female victim, [C.E.], engaged in sex with two males." (Tr. 399.) He explained that the two males "were taking turns, so one was videotaping and then the other was videotaping as the other one had sex." (Tr. 399.)

**{¶87}** The testimony of the victim, Leslie, and Detective Schoffstall established that the video appellant posted on Facebook displayed Raynard and the victim engaging in "sexual conduct" as defined in R.C. 2907.01(A). Furthermore, the record reflects that appellant published and/or publicly displayed the video by posting it on his Facebook page, where it was viewed by several witnesses.

**{¶88}** Based on the foregoing analysis, we find that appellant's conviction for pandering obscenity was supported by sufficient evidence.

**{¶89}** Regarding appellant's manifest weight challenge, he does not develop a separate argument with respect to the manifest weight of the evidence. Rather, appellant's entire argument focuses on whether there was sufficient evidence supporting his pandering obscenity conviction. Nevertheless, after reviewing the record, we cannot say that this is the exceptional case where the evidence weighs heavily against the conviction for pandering obscenity, nor that the jury clearly lost its way and created a manifest miscarriage of justice. Therefore, appellant's

conviction for pandering obscenity is not against the manifest weight of the evidence. Accordingly, appellant's fourth assignment of error is overruled.

## C. Allied Offenses

**{¶90}** In his fifth assignment of error, appellant argues that the trial court erred by failing to merge the extortion and intimidation counts for sentencing purposes. He contends that both offenses were committed by one act — the phone call he placed to Nautica — and with the same animus.

**{¶91}** Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(B) provides, however, that "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his [or her] conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

> In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court explained that an allied offenses analysis is not limited to just a consideration of the defendant's conduct. The *Ruff* court held that while an allied offenses analysis begins with an examination of the defendant's conduct, courts must also consider whether (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B). Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

*State v. Williams*, 8th Dist. Cuyahoga No. 106266, 2018-Ohio-3368, ¶ 81.

{¶92} In the instant matter, after the jury returned its verdict, the trial court sought input from the parties regarding whether the extortion and intimidation counts merged as allied offenses for sentencing purposes. The state filed a sentencing memorandum on December 4, 2017, in which it argued that the extortion and intimidation counts were not allied offenses of similar import under the test established by the Ohio Supreme Court in *Ruff* because the offenses were committed separately and with a separate animus or motivation.

{¶93} During the sentencing hearing, defense counsel argued that the extortion and intimidation counts should merge pursuant to the two-part test in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. Counsel asserted that the extortion and intimidation offenses were committed by the same conduct and a single act, posting the video of Raynard and the victim on Facebook, and that this single act was the basis for the extortion, intimidation, and pandering obscenity offenses appellant was convicted of. (Tr. 577.)

{¶94} After considering the parties' arguments, the trial court concluded that the extortion and intimidation offenses were not allied offenses of similar import, explaining:

> There are at least two separate actions here. There was [appellant's] phone call in which he threatened to post the video and then there was the later subsequent and actual posting of the video. So there are two separate actions, link the threat to the extortion count and the posting to the intimidation count.

(Tr. 578-579.)

{¶95} After reviewing the record, and applying the *Ruff* test, we find that the extortion and intimidation convictions are not allied offenses of similar import because they were committed separately and with separate animus or motivation. Contrary to appellant's assertion, the phone call with Nautica was not the basis for both offenses. Appellant committed the extortion offense by threatening to release the videos of him and Raynard with the victim if she continued to allege that she had been raped. Appellant's motivation in committing this offense

was to silence the victim. Appellant committed the intimidation offense by posting the video of Raynard and the victim on Facebook and sending the video of him and the victim to Nautica. Appellant's motivation in committing this offense was to intimidate the victim from coming forward and to disparage the victim and her reputation.

{¶96} Appellant's separate forms of conduct and motivations support the trial court's conclusion that the extortion and intimidation convictions were not allied offenses of similar import. Accordingly, appellant's fifth assignment of error is overruled.

### D. Sentence

{¶97} In his sixth assignment of error, appellant argues that the trial court erred in imposing consecutive sentences. Appellant does not challenge the trial court's findings under R.C. 2929.14(C)(4). Rather, appellant appears to argue that the trial court imposed consecutive sentences in order to punish him for rejecting the plea agreements offered by the state and exercising his right to trial.

{¶98} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

> A trial court may not sentence a defendant more severely simply because he exercised his right to trial. *Columbus v. Bee*, 67 Ohio App.2d 65, 425 N.E.2d 404, 425 N.E.2d 409 (10th Dist.1979). The United States Supreme Court has held that a trial court violates the Due Process Clause of the Fourteenth Amendment when the court, motivated by vindictiveness, imposes a harsher sentence than previously discussed prior to trial. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). A court may not punish an

accused for rejecting a plea and electing to proceed to trial. *State v. Shepherd*, 8th Dist. Cuyahoga No. 97962, 2012-Ohio-5415, [¶] 68.

However, vindictiveness is not presumed merely because the trial court imposed a stricter sentence than the one offered in plea negotiations. *Id.* In determining whether a court was motivated by vindictiveness to impose a harsher sentence, the record must affirmatively show retaliation as a result of the rejected plea bargain. *Id.*; *see also State v. Warren*, 125 Ohio App.3d 298, 307, 708 N.E.2d 288 (8th Dist.1998). There must be some positive evidence demonstrating a vindictive purpose on the court's part. *Shepherd* at ¶ 68.

*State v. Sultaana*, 2016-Ohio-199, 57 N.E.3d 433, ¶ 52-53 (8th Dist.).

**{¶99}** In this case, appellant appears to argue that the trial court imposed maximum and consecutive sentences on the extortion, intimidation, and pandering obscenity counts in order to punish him "for refusing to plead guilty and exercising his right to a trial." Appellant's brief at 22. He further contends that the trial court should not have imposed maximum and consecutive sentences because the jury acquitted him on the first-degree felony counts of rape and kidnapping. After review, however, we find nothing in the record suggesting that the trial court was motivated by vindictiveness.

**{¶100}** Before the jury trial commenced, the prosecutor explained the two plea agreements that had been offered to appellant. (Tr. 7-8.) The parties did not, however, discuss any particular sentence that would be agreed upon or recommended under these plea agreements.

**{¶101}** The trial court provided a reasonable and detailed explanation for imposing the aggregate seven-year prison sentence. Before imposing its sentence, the trial court reviewed appellant's criminal history, which included convictions for assaulting a corrections officer, robbery, having weapons while under disability, and domestic violence. The trial court considered a report from the Ohio Department of Rehabilitation and Correction and Lorain

Correctional Institution that detailed multiple infractions appellant committed while he was incarcerated.

{¶102} The trial court addressed appellant's conduct in the instant matter, emphasizing that appellant's behavior was "appalling" and the court considered how appellant's actions affected the victim and caused her "great embarrassment." (Tr. 584-585.) Finally, the trial court considered that appellant committed the extortion, intimidation, and pandering obscenity offenses while he was on postrelease control.

{¶103} It is undisputed that the trial court sentenced appellant within the permissible statutory ranges set forth in R.C. 2929.14(A). The trial court's sentencing journal entry provides, in relevant part, "the court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11." Furthermore, the record reflects that the trial court did, in fact, consider the sentencing factors under R.C. 2929.11 and 2929.12 in imposing its sentence.

{¶104} Although appellant does not challenge the consecutive sentence findings the trial court made during the sentencing hearing, the record reflects that the trial court complied with R.C. 2929.14(C)(4) in imposing consecutive sentences.

{¶105} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant

to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶106} Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Further, the reviewing court must be able to discern that the record contains evidence to support the findings. *State v. Davis*, 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29. A trial court is not, however, required to state its reasons to support its findings, nor is it required to give a rote recitation of the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

{¶107} In this case, the trial court determined that R.C. 2929.14(C)(4)(a) applied as appellant committed the extortion, intimidation, and pandering obscenity offenses while he was on postrelease control in CR-12-565610. In making the requisite findings under R.C. 2929.14(C)(4), the trial court stated:

He did this all while on post-release control in Case Number 565610. The Court finds the defendant's conviction to be a violation of the terms of his post-release control and the Court chooses to terminate his post-release control. He will be

ordered to serve the remaining term of his post-release control or one year, whichever is greater, in custody of the Ohio Department of Rehabilitation and Correction as a sanction for violating his post-release control terms.

His post-release control sanction will be served consecutively to the sentence I'm about to impose on Case 611300 by operation of law.

I plan to impose consecutive terms. I find that consecutive sentences is necessary to protect the public from future crimes, certainly to be committed by a man who has no respect for other human beings, and to punish this outrageous behavior.

Consecutive sentences, a sentence of seven years is not disproportionate to the seriousness of his conduct and to the danger he poses to the public. And that these offenses were committed while he was on post-release control for a prior offense.

(Tr. 585-586.)

{¶108} Although the trial court made the appropriate consecutive sentence findings during the sentencing hearing, the trial court did not incorporate its consecutive sentence findings into its sentencing journal entry as required by *Bonnell*. Accordingly, we remand the matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry incorporating the court's R.C. 2929.14(C)(4) findings. *See Bonnell* at ¶ 30 ("A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court."). *Accord State v. Middleton*, 8th Dist. Cuyahoga Nos. 106197, 106200, and 106202, 2018-Ohio-2524, ¶ 6.

{¶109} For all of the foregoing reasons, appellant's sixth assignment of error is overruled.

### III. Conclusion

{¶110} After thoroughly reviewing the record, we affirm appellant's convictions and the trial court's sentence. Appellant's speedy trial rights were not violated. Appellant's

convictions were supported by sufficient evidence and are not against the manifest weight of the evidence. The trial court did not err by failing to merge the extortion and intimidation convictions for sentencing purposes. The trial court did not err in imposing consecutive sentences.

{¶111} The trial court failed to incorporate its R.C. 2929.14(C)(4) consecutive sentence findings into its sentencing journal entry. Accordingly, we remand the matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry incorporating the consecutive sentence findings.

{¶112} Judgment affirmed; case remanded to the trial court for the issuance of a nunc pro tunc sentencing journal entry.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY EILEEN KILBANE, P.J., and
LARRY A. JONES, SR., J., CONCUR